Whitaker, Judge,
delivered the opinion of the court:
The question in this case is the proper basis for the computation of depreciation on certain assets acquired by the- *351 plaintiff from the Akron Rubber Mold and Machine Company, DeMattia Brothers, Inc., and DeMattia Foundry & Machine Company.
These assets were acquired under these circumstances: In the early part of 1928 one Francis Quinn approached each of the three above companies, and also the Banner Machine Company and the Kuhlke Machine Company, with proposals for the transfer of their assets to a corporation to be organized, the plaintiff in this case. Contracts were entered into between him and each of these five companies, under which they agreed to convey all of their assets to this corporation for a certain amount in cash, the assumption of their liabilities, and the issuance to them of a certain number of shares of plaintiff’s stock, except that the contract with the Kuhlke Machine Company provided for a transfer of only a portion of its assets to plaintiff, and none of its liabilities were assumed. Plaintiff was to have an authorized capital of 152,000 shares of common stock of no par value. 15,000 shares of it were to be issued to Francis Quinn for his services, and 35,000 shares were to be sold to <X. A. Sisto & Company, bankers, at $15.00 a share. The plaintiff was also to issue $1,300,000 of first mortgage six percent bonds, which were to be sold to J. A. Sisto & Company at 90 percent of their par value.
Pursuant to these agreements, a total of 82,080 shares of plaintiff’s stock were actually issued, 12,000 to the Akron Rubber Mold & Machine Company, 11,000 to the DeMattia companies, 4,000 to Banner Machine Company, 5,080 to Kuhlke Machine Company, 15,000 to Francis Quinn, and 35,000 to J. A. Sisto & Company.
The Commissioner of Internal Revenue held that this transaction was a reorganization, and that the proper basis for depreciation of the assets received from the Akron Rubber Mold & Machine Company and the two DeMattia companies was the cost of those assets to those companies, and not to the plaintiff. But, on the contrary, he held that the proper basis for the assets received from the Banner Machine Company and the Kuhlke Machine Company was their cost to plaintiff, or, in the absence of proof of cost, their market value at the time plaintiff acquired them. *352 This, he held, was for the reason that neither the Bann’er Machine Company nor Kuhlke Machine Company was a party to the reorganization. The Banner Machine Company was not a party to the reorganization because prior to the time it received the stock from the plaintiff it had made commitments for the sale of it and, in fact, did later sell it,; the Kuhlke Machine Company was not a party to the reorganization because the plaintiff did not acquire “substantially all of the properties of the company.”
The assets of these companies being eliminated, the controversy is over the proper basis for depreciation of the Akron and DeMattia assets. The defendant says that this basis is their cost to the Akron: and the DeMattia companies, for either one of two reasons: first, because the transaction was one described in section 112 (b) (4) and 112 (d) (1) of the [Revenue Act of 1928 (45 Stat. 791, 816, 817); or, second, it comes within one of the two exceptions to the general rule set out in subparagraphs (7) and (8) of section 113 (a) of said act. The plaintiff says that cost to it is the proper basis.
It seems clear that the transaction is one such as is described in section 112 (b) (4) and 112 (d) (1). Section 112 (b) (4) provides:
No gain or loss shall be recognized if a corporation a party to a reorganization exchanges property, in pursuance of the plan of reorganization, solely for stock or securities in another corporation a party to the reorganization.
Section 112 (d) (1) makes this section applicable, even though property or money, in addition to stock, be exchanged for other property, provided such property or money be distributed in pursuance to the plan of reorganization. The transaction here clearly was a reorganization, and the money received by the plaintiff’s predecessors was distributed by them pursuant to the plan of reorganization, and the above-quoted sections, therefore, are applicable.
From this premise the defendant argues that since these sections provide that no gain or loss is recognized as the result of such a transaction, the proper basis for computing depreciation on the property received must be its basis in the hands of the transferor. This probably would follow, *353 except for the fact that the method for computing depreciation in a transaction such as we have here is expressly provided for in sections 113 and 114.
Section 114 makes the basis for computing depreciation the same as the basis for computing gain or loss, and section 113 fixes cost as the ordinary basis for computing gain or loss on property acquired after February 28,1913; but it sets out twelve exceptions to this general rule. Exception number (6) provides that if property was acquired in the manner this property was acquired, “the basis shall be the same as in the case of the property exchanged.” This seems to support defendant’s position; but the section concludes—
This paragraph shall not apply to property acquired by a corporation by the issuance of its stock or securities as the consideration in whole or in part for the transfer of the property to it.
Thus we see that while this section is applicable to the corporation transferring its property for stock, it is expressly made inapplicable to the corporation issuing its stock for property.
The case of the latter corporation, the one receiving property for its stock, is taken care of in the succeeding paragraphs. Paragraph (7), immediately following the above-mentioned paragraph, provides that the basis for the property received for stock in a reorganization shall be the same as it would be in the hands of the transferor, but only in the event that “immediately after the transfer an interest or control in such property of 80 per centum or more remained in the same persons or any of them.” If such interest or control did not remain in such hands, then, of course, the general rule applied, to wit, cost.
In subparagraph (8) another case is described where cost to the seller is not the proper basis. This is where property is transferred by one or more persons to a corporation solely in exchange for its stock or securities and where immediately after the exchange the persons transferring the property are in control of the corporation in substantially the same proportion as their former interests in the property transferred. (The defendant concedes that for this section to be applicable, as well as subsection (7), the *354 transferors must have not less than an 80 percent interest or control in the transferee corporation.)
These are the only two exceptions that could have any application to the transaction in the case at bar. In all other cases section 113 expressly says that cost to the purchaser shall be the basis. Unless, therefore, 80 percent interest or control remains in the same persons after the transfer, the proper basis is the cost to the plaintiff, and not cost to the persons who transferred the property to plaintiff. The question to be answered, therefore, is, did this 80 percent or more remain in the hands of the same persons.
The total number of shares issued was 82,080. . Eighty percent of this is 65,664 shares. It is conceded that the 23,000 shares issued to the Akron and the two DeMattia companies are to be counted in reckoning this 80 percent. On the other hand, it is conceded that the shares issued to the Kuhlke Machine Company are not to be counted, because the plaintiff did not acquire substantially all the property of that company; and it is also conceded that the shares issued to the Banner Machine Company ar¡e not to be counted because of the fact that prior to its receipt of these shares the Banner Machine Company had entered into a binding option to sell them, and because the option was later exercised and the shares were in fact sold.
This latter concession was in accord with the decision of the Sixth Circuit Court of Appeals in Banner Machine Co. v. Routzahn, 107 F. (2d) 147; certiorari denied, 309 U. S. 676; rehearing denied, 310 U. S. 656. It was there held, under the precise facts here, that, insofar as this company was concerned, the transaction then under review was “nothing but the purchase of appellant’s assets.” The court said:
It is true that in addition to cash, stock was received; but the purpose to reduce that stock to cash was clearly shown by the giving of the option to the underwriter for the sale of the stock prior to the receipt thereof. Appellant in effect discounted the stock for cash. The two corporations in fact did not contemplate a reorganization, merger or consolidation.
This reduces the controversy to the 35,000 shares of stock issued to J. A. Sisto & Company. The plaintiff says that *355 these also ought to be excluded from consideration on the same theory the Banner shares were excluded, because Sisto & Company also had entered into a binding obligation to sell these shares prior to the time they received them. The facts are that prior to the reorganization J. A. Sisto & Company, through their associates Jerome B. Sullivan & Company and E. F. Gillespie & Company, had entered into binding commitments with members of the public for the sale of all of said 35,000 shares of stock, and all of the bonds which Sisto & Company had agreed to purchase; and immediately after the reorganization these stocks and bonds were in fact sold to the public, and Sisto & Company had no further interest therein. (See finding 19.) It is true that immediately after the issuance of plaintiff’s stock Sisto & Company did own 35,000 shares, but they owned them under a binding agreement to sell them immediately. As was said by the Ninth Circuit Court of Appeals in Commissioner v. Schumacher Wall Board Corp., 93 F. (2d) 79, 81—
* * * the series of transactions must be viewed as a unit, and the ownerships of 80 per cent interest compared at the beginning and end of the consummation of the entire plan.
So viewing the transaction, and on the authority of the cases cited, these shares must be excluded in determining whether or not 80 per cent control remained in the hands of the same persons.
Deducting these 35,000 shares from the total shai’es issued, leaves only 47,08o1 shares, which is considerably less than the 80 per cent fixed by the statute.
It results that plaintiff is correct in saying the proper basis for the assets in question is their cost to it.
Entry of judgment will be deferred until the filing of a stipulation by the parties, or, in the absence of such stipulation, until the incoming of a report of a commissioner showing the amount due plaintiff in accordance with this opinion. It is so ordered.
Madden, Judge; Jones, Judge; Littleton, Judge; and Whaley, Chief Justice, concur.