**GREDE FOUNDRIES, INC., a corporation, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

No. 60–C–205.

United States District Court
E. D. Wisconsin.

Feb. 28, 1962.

Thomas J. Donnelly, Jr., and Patrick W. Cotter, of Brady, Tyrrell & Bruce, Milwaukee, Wis., for plaintiff.

John B. Jones, Jr., Acting Asst. Atty. Gen., Daniel M. Dwyer, Edward S. Smith, Jerome Fink, Bruno Lederer, Attys., Dept. of Justice, Washington, D. C., and James B. Brennan, U. S. Atty., Milwaukee, Wis., for defendant.

GRUBB, District Judge.

■ This is an action for the recovery of federal income taxes alleged to have been erroneously collected from plaintiff for its fiscal year ending October 31, 1955. The court has jurisdiction under § 1346, Title 28 U.S.C.A. The issue for decision by the court is whether plaintiff must recognize a taxable gain as a result of a "plan of reorganization" carried out on October 31, 1955, between plaintiff and Liberty Foundry Corporation.

Plaintiff, Grede Foundries, Inc., is a Wisconsin corporation engaged in the foundry business. Liberty Foundry Corporation (hereinafter referred to as "Liberty") was formerly a Wisconsin corporation engaged in the business of fabricating and selling ductile iron. As of October 31, 1955, plaintiff owned 70 per cent, or 175 shares, of the total of 250 issued and outstanding shares of Liberty. The remaining 75 shares were owned by

certain officers of plaintiff and by members of the Grede family.

In order to achieve certain operating economies as well as to avoid a "conflict of interest" among those minority shareholders of Liberty who were officers of plaintiff, the "plan of reorganization" was adopted by plaintiff's board of directors on October 18, 1955. Under the plan, plaintiff issued 5,000 shares of its Class A common stock to Liberty in exchange for all of Liberty's assets, subject to liabilities. Upon receipt of the 5,000 shares of plaintiff's stock, Liberty distributed them pro rata to its shareholders who then surrendered their Liberty shares to Liberty. Plaintiff therefore received back 3,500 of its own shares in exchange for its 175 Liberty shares. All Liberty shares were then cancelled, and Liberty was dissolved. The plan was adopted by the board of directors and all shareholders of Liberty at a meeting held on October 31, 1955, the day on which the plan was carried out.

The Commissioner of Internal Revenue determined that plaintiff realized a gain as a result of the acquisition of Liberty's assets, taxable under § 331(a) (1) [1] of the Internal Revenue Code of 1954, 26 U.S.C.A. § 331(a) (1). Plaintiff paid the tax thereon and filed its claim for refund, alleging that the transaction was a nontaxable "reorganization" under § 368(a) (1) (C) of the Internal Revenue Code of 1954, 26 U.S.C.A. § 368(a) (1) (C), which provides as follows:

"§ 368. *Definitions relating to corporate reorganizations*

"(a) *Reorganization.*—

"(1) *In general.*—For purposes of parts I and II and this part, the term 'reorganization' means—

\* \* \* \* \* \*

"(C) the acquisition by one corporation, in exchange solely for all or a part of its voting stock (or in exchange solely for all or a part of the voting stock of a corporation which is in control of the acquiring corporation), of substantially all of the properties of another corporation, but in determining whether the exchange is solely for stock the assumption by the acquiring corporation of a liability of the other, or the fact that property acquired is subject to a liability, shall be disregarded;"

If the transaction qualified as a "reorganization" under this section, no gain or loss is recognized pursuant to § 361 (a) [2] of the Internal Revenue Code of 1954, 26 U.S.C.A. § 361(a).

■ The crucial element of a nontaxable "(C)" type reorganization is that the acquisition of the assets of Liberty must have been in exchange *solely* for plaintiff's voting stock. The Supreme Court has stated that this requirement " \* \* \* leaves no leeway. Voting stock plus some other consideration does not meet the statutory requirement." Helvering v. Southwest Consolidated Corp., 315 U.S. 194, 198, 62 S.Ct. 546, 550, 86 L.Ed. 789 (1942).

■ Defendant's attack on the transaction here involved is based on the fact that plaintiff, in acquiring the assets of Liberty, exchanged not only its own voting stock but also its 175 shares of Liberty stock. It is not disputed that the first step of the plan, i. e., the transfer to plaintiff of Liberty's assets in exchange for 5,000 shares of plaintiff's stock, would be squarely within § 368 (a) (1) (C) if it had ended there. The difficulty is that the second step of the plan required Liberty to liquidate, with

1. "§ 331. *Gain or loss to shareholders in corporate liquidations*
    "(a) *General rule.*—
    "(1) *Complete liquidations.*—Amounts distributed in complete liquidation of a corporation shall be treated as in full payment in exchange for the stock."

2. "§ 361. *Nonrecognition of gain or loss to corporations*
    "(a) *General rule.*—No gain or loss shall be recognized if a corporation a party to a reorganization exchanges property, in pursuance of the plan of reorganization, solely for stock or securities in another corporation a party to the reorganization."

Liberty's shareholders (including plaintiff) exchanging Liberty stock for plaintiff's stock. Each step is part of one integrated plan, and for federal income tax purposes the court must consider only the end result, not its component parts. See Gregory v. Helvering, 293 U.S. 465, 55 S.Ct. 266, 79 L.Ed. 596 (1935); Helvering v. Alabama Asphaltic Limestone Co., 315 U.S. 179, 62 S.Ct. 540, 86 L.Ed. 775 (1942).

A substantially identical plan was held not to meet the requirements of a nontaxable reorganization in Bausch & Lomb Optical Company v. Commissioner of Internal Revenue, 267 F.2d 75 (2d Cir. 1959), cert. denied 361 U.S. 835, 80 S.Ct. 88, 4 L.Ed.2d 76. Although the case was decided under the predecessor of § 368 (a) (1) (C) (i. e., § 112(g) (1) (C) of the Internal Revenue Code of 1939, 26 U.S.C.A. § 112(g) (1) (C) ),[3] that statute is identical in all material respects. The facts, insofar as pertinent, were as follows: Plaintiff, Bausch & Lomb Optical Company, owned 79.9488% of the outstanding stock of Riggs Optical Company, or 9923¼ of the 12,412 shares. In order to effectuate certain operating economies, Bausch & Lomb decided to amalgamate Riggs with itself. Pursuant to this plan, Bausch & Lomb exchanged 105,508 shares of its voting stock for all of Riggs' assets. Riggs then dissolved, distributing its only asset, Bausch & Lomb stock, pro rata to its shareholders. Bausch & Lomb thus received back 84,347 of its own shares, while 21,161 shares went to Riggs' minority shareholders.

Based upon these facts, the court of appeals upheld the Tax Court's determination that the acquisition of Riggs' assets and the dissolution of Riggs must be viewed together as parts of one inte-grated plan, and therefore the acquisition of Riggs' assets was not obtained "solely for all or a part of its voting stock" since the surrender of its Riggs stock by Bausch & Lomb was additional consideration.

■ Substantially the same argument was presented in the Bausch & Lomb case as plaintiff presents in this action; i. e., that each step in the plan had a separate and distinct business purpose. Assuming this to be true, this fact alone does not serve to render the transaction nontaxable. The specifications of the reorganization provisions of the code are precise and must be strictly complied with in order to entitle the taxpayer to the benefit of tax-free treatment thereunder. See Turnbow v. Commissioner of Internal Revenue, 368 U.S. 337, 82 S.Ct. 353, 7 L.Ed.2d 326 (1961); Treasury Regulations § 1.368–1 and 2 (1954).

As stated in the Bausch & Lomb case, supra, 267 F.2d at pages 77–78:

" * * * the Congress has defined in Section 112(g) (1) (C) how a reorganization thereunder may be effected, and the only question for us to decide, on this phase of the case, is whether the necessary requirements have been truly fulfilled. It is for the Congress and not for us to say whether some other alleged equivalent set of facts should receive the same tax free status."

Plaintiff contends that the decisions in Helvering v. Winston Bros. Co., 76 F.2d 381 (8th Cir. 1935), and Commissioner of Internal Revenue v. Freund, 98 F.2d 201 (3rd Cir. 1938), are diametrically opposed to the decision in the Bausch & Lomb Optical Company case, supra. The former decisions were based

---

3. "§ 112. *Recognition of gain or loss—*

    *     *     *     *     *

"(g) *Definition of reorganization.* As used in this section * * *

"(1) The term 'reorganization' means * * * (C) the acquisition by one corporation, in exchange solely for all or a part of its voting stock, of substan-tially all the properties of another corporation, but in determining whether the exchange is solely for voting stock the assumption by the acquiring corporation of a liability of the other, or the fact that property acquired is subject to a liability, shall be disregarded, * * *."

upon a statutory definition of "reorganization" under the Revenue Act of 1928, § 112(i) (1), which was broader in scope than the definition introduced into the code by the Revenue Act of 1934 when the "solely for voting stock" limitation was first enacted. See 3 Mertens, Law of Federal Income Taxation, § 20.90, page 327; Revenue Ruling 54–396, Cum.Bull. 1954–2. These cases are, therefore, not persuasive authority under the present statutory definition.

■ Plaintiff further urges that this transaction differs from the one involved in the Bausch & Lomb Optical Company case, supra, in that the second step, i. e., the transfer by plaintiff of its 175 Liberty shares to Liberty, if considered alone, would be nontaxable under § 311 (a)[4] of the 1954 Code, 26 U.S.C.A. § 311(a). There was no comparable section in the 1939 Code under which the Bausch & Lomb Optical Company case was decided. The purpose of § 311 was to codify the general rule that a corporation does not realize taxable income when it distributes property to its stockholders. See 3 U.S.Code Cong. and Admin.News, 83rd Cong., 2d Sess. (1954), page 4884; Treasury Regulations § 1.-311–1 (1954). Plaintiff's argument assumes that Liberty, while it momentarily held plaintiff's stock, became a stockholder of plaintiff and that the surrender of the 175 Liberty shares was a "distribution, with respect to its stock, of * * * property" within the meaning of § 311 (a) (2).

Not only does this theory ignore the integrated nature of the whole plan, but it distorts the substance and purpose of it. In fact, plaintiff has conceded in its pretrial brief at page 25 that the transitory ownership of plaintiff's stock by Liberty should be disregarded in determining the net effect of the entire transaction. Moreover, this theory was not presented by plaintiff in its claim for refund and, therefore, could not be considered in this action, even if it had merit. Real Estate-Land Title & Trust Co. v. United States, 309 U.S. 13, 18, 60 S.Ct. 371, 84 L.Ed. 542 (1940).

The fact that various nontaxable alternative methods[5] could have been utilized to achieve the same objectives is, as stated in the Bausch & Lomb Optical Company case, supra, 267 F.2d at page 78, " * * * beside the point. For reasons of its own it chose not to do so."

Plaintiff's board of directors had considered a merger under the laws of the State of Wisconsin as a means of accomplishing its objectives, which merger could have resulted in a tax-free reorganization as a "statutory merger" under § 368(a) (1) (A), but it was determined that the merger procedure would be too lengthy. The board was advised by its counsel that the plan which was adopted here would be the simplest and most practical way to accomplish its purpose. Having chosen this method, plaintiff must bear the tax consequences resulting therefrom.

The court finds that the acquisition of the assets of Liberty was not "in exchange solely for voting stock" of plaintiff, and therefore the transaction does not qualify as a "reorganization" within the meaning of § 368(a) (1) (C).

■ Plaintiff has not met its burden of proof that it is entitled to a refund of federal income taxes for the fiscal year ended October 31, 1955.

4. "§ 311. *Taxability of corporation on distribution*
  "(a) *General rule.*—Except as provided in subsections (b) and (c) of this section and section 453(d), no gain or loss shall be recognized to a corporation on the distribution, with respect to its stock, of—
  "(1) its stock (or rights to acquire its stock), or
  "(2) property."

5. E. g., by a "statutory merger or consolidation" under § 368(a) (1) (A), or by an exchange of plaintiff's voting stock for the minority stock of Liberty under § 368(a) (1) (B), followed by the liquidation of Liberty under § 332.

The court hereby adopts the stipulated facts as findings of fact. Additional findings of fact are as set forth in this decision, as are the court's conclusions of law, in conformity with Rule 52(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A. The clerk is hereby directed to enter judgment in favor of the defendant dismissing this action.