**HUCKINS TOOL AND DIE, INC., an Indiana corporation, Petitioner,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

**No. 13105.**

United States Court of Appeals
Seventh Circuit.

April 11, 1961.

James F. Thornburg, Edward J. Gray, John L. Carey, South Bend, Ind., for petitioner.

Lee A. Jackson, Chief, Appellate Section, Harold M. Seidel, Atty., U. S. Dept. of Justice, Washington, D. C., Abbott M. Sellers, Acting Asst. Atty. Gen., Robert N. Anderson, Atty., Dept. of Justice, Washington, D. C., for respondent.

Before SCHNACKENBERG and CASTLE, Circuit Judges, and GRUBB, District Judge.

SCHNACKENBERG, Circuit Judge.

From the Tax Court's decision determining deficiencies in income tax of Huckins Tool and Die, Inc., an Indiana corporation, petitioner, for the years 1951, 1952, and 1953, it appeals to this court.

The court heard the testimony of witnesses and received documentary evidence. Based thereon, as well as upon a stipulation of facts, the court made findings of fact, the most salient of which we now state, in substance.

Petitioner was organized under Indiana law in 1937. In the taxable years of 1951–1953 inclusive, ownership of the outstanding shares of petitioner was as follows:

| James R. Huckins | 501 shares |
| Robert J. Huckins | 249 shares |
| Richard E. Huckins | 249 shares |
| Cora R. Huckins | 1 share |

These persons were also petitioner's board of directors. In these years the officers were: James R. Huckins, president, Robert J. Huckins, secretary and assistant treasurer, and Richard E. Huckins, treasurer. James R. is the father of Robert and Richard.

In the taxable years the petitioner's plant and principal place of business of a tool and die shop was located in South Bend, Indiana, where it was operated under the direction of the officers who devoted their time and efforts exclusively thereto. In a tool and die business the complexities of design and fabrication are such that highly skilled labor and technical skill are required to manufacture tools, dies and fixtures where tolerances in some instances must be held to a range of no greater than .0001 of an inch.

James R. Huckins was born in 1889, Richard E. in 1918 and Robert J. in 1915.

During the taxable years petitioner had no pension or profit-sharing plan, or any other form of deferred compensation plan except a small group life insurance plan which included all employees and which insured the life of each executive. On January 30, 1950, petitioner's board of directors fixed the following basic salaries: James R. Huckins, $36,000; Robert J. Huckins, $24,000; and Richard E. Huckins, $24,000. At the same time and again in each taxable year the board adopted a resolution providing for supplemental annual compensation of 30 percent of petitioner's net earnings before federal income taxes, the amount to be apportioned according to the following ratio: James R., three-sevenths; Robert

J., two-sevenths; and Richard E., two-sevenths.

Under these arrangements the following amounts of compensation were paid:

| | 1950 | 1951 | 1952 | 1953 |
|---|---|---|---|---|
| James R. Huckins | $ 54,177 | $ 73,999 | $ 64,220 | $ 77,795 |
| Robert J. Huckins | 36,118 | 49,332 | 42,813 | 51,863 |
| Richard E. Huckins | 36,118 | 49,332 | 42,813 | 51,863 |
| | $126,413 | $172,663 | $149,846 | $181,521 |

The type of plan on which the compensation was based, namely, a base salary plus a bonus of a share of the profits, is neither unusual in industry in general, nor in the tool and die business in particular. Such a plan had been in effect in the petitioner's business for a long period of time, altho the above plan or formula began in 1950.

Petitioner's books and federal income tax records reflect the following:

| | Officers' Salaries Paid | Net Income Before Taxes |
|---|---|---|
| 1947 | $ 81,000 | $ 43,207 |
| 1948 | 81,000 | 50,236 |
| 1949 | 84,000 | 10,788 |
| 1950 | 126,414 | 98,968 |
| 1951 | 172,665 | 206,885 |
| 1952 | 148,848 | 153,645 |
| 1953 | 181,523 | 227,555 |
| 1954 | 124,777 | 95,146 |
| 1955 | 104,075 | 46,842 |

The business activities of the tool and die industry are cyclical in nature and tend, over the years, to fluctuate widely. Petitioner was particularly busy in the years 1951 to 1953, due in substantial measure to the Korean conflict. During these years petitioner did not find it necessary to actually engage in selling its services, as customers sought out petitioner in order for them to meet the requirements of the wartime economy.[1]

The increase in production and sales during this period, which was due in substantial measure to the Korean conflict, did not result in a commensurate increase in the duties and responsibilities of petitioner's officers although such increases in business activity did add, to some extent, additional burdens and responsibilities to their existing workload.

The only cash dividend ever declared or paid by petitioner was in the amount of $30,000 in the year 1943.

The Commissioner of Internal Revenue determined that the salaries paid to petitioner's executives were unreasonable and excessive and to the extent below indicated disallowed the amounts of deductions therefor.

| Year | Amounts Claimed | Amounts Disallowed |
|---|---|---|
| 1951 | $172,665 | $112,665.08 |
| 1952 | 149,848 | 89,848.14 |
| 1953 | 181,523 | 121,523.74 |

The effect of the foregoing was to allow compensation deductions in the amount of $60,000 for all three executives for each of said years without designating particular amounts as reasonable for any one of said executives.

Thereupon, the Tax Court held that (1) a portion of the compensation deducted by petitioner and paid to James, Robert, and Richard Huckins for each of the years 1951, 1952, and 1953, was in excess of reasonable; (2) reasonable

1. Petitioner had sales during 1951 through 1954 which were subject to renegotiation proceedings. For 1951 and 1952 petitioner is contesting the determinations of the Renegotiation Board, including the amounts and items subject to renegotiation. Its reports filed with the Board for 1953 and 1954 were approved as filed.

compensation and compensation in excess of reasonable, as to each of said executives, for each of the years, are, as follows:

|  | Year | Reasonable | In excess of reasonable |
|---|---|---|---|
| James R. Huckins | 1951 | $58,999 | $15,000 |
|  | 1952 | 51,700 | 12,500 |
|  | 1953 | 62,295 | 15,500 |
| Robert J. Huckins | 1951 | $39,332 | $10,000 |
|  | 1952 | 34,313 | 8,500 |
|  | 1953 | 41,613 | 10,250 |
| Richard E. Huckins | 1951 | $39,332 | $10,000 |
|  | 1952 | 34,313 | 8,500 |
|  | 1953 | 41,613 | 10,250 |

In its opinion, the Tax Court remarked:

"We think it patent that the marked increases in sales, gross profits and net profits before taxes, were due in substantial degree to Korean War conditions. Likewise, we think it clear that the compensation of the executives, geared largely to profits, reflected in substantial measure the fortuities of the war economy without commensurate increase in the duties and responsibilities of the executives or in the value of their services."

The court in its decision ordered deficiencies for the taxable years pursuant to its findings and opinion.

1. 26 U.S.C.A. § 23, 1939 Internal Revenue Code, provides:

"§ 23. Deductions from gross income. In computing net income there shall be allowed as deductions:

"(a) Expenses.

"(1) Trade or business expenses.

"(A) In general. All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including a reasonable allowance for salaries or other compensation for personal services actually rendered;
* * *."

Ascertainment of what is reasonable compensation for services rendered is one of fact to be decided by the Tax Court upon the evidence presented and its findings thereon we will not disturb unless they are clearly erroneous. Fed.Rules Civ.Proc. 28 U.S.C.A. Rule 52 (a). United States v. United States Gypsum Co., 333 U.S. 364, 393, 68 S.Ct. 525, 92 L.Ed. 746, and Gilman Paper Co. v. Commissioner, 2 Cir., 284 F.2d 697, 699. Thus in Wisconsin Memorial Park Co. v. Commissioner, 7 Cir., 255 F.2d 751, at page 753, we recognized the application of Rule 52(a) to our review of decisions of the Tax Court. In our determination of whether there is substantial evidence to support the findings of the Tax Court, the evidence before the court must be viewed in the light most favorable to the result there reached. It has the primary function of finding the facts in tax disputes, weighing the evidence, and choosing from among conflicting factual inferences and conclusions those which it considers most reasonable. We have no power to change or add to those findings of fact or to reweigh the evidence.

Our examination of the record convinces us that the findings of the Tax Court are supported by substantial evidence and are not clearly erroneous.

Special scrutiny should be given to compensation paid by corporations when

the stock is closely held, because of the lack of arms-length bargaining, which in turn may indicate an intent to affect and disguise distribution of profits. Golden Construction Co. v. Commissioner, 10 Cir., 228 F.2d 637, 638.

As to the amounts of deductions which have been approved by the Tax Court, we said in Clinton Co. v. Commissioner, 7 Cir., 159 F.2d 102, 104:

" * * * The Tax Court 'must necessarily exercise its own judgment and discretion,—reasonable allowance [s], cannot be ascertained with mathematical precision.' Atlas Plaster & Fuel Co. v. Commissioner, 6 Cir., 55 F.2d 802, 804; Tumwater Lumber Mills Co. v. Commissioner, 9 Cir., 65 F.2d 675. * * *"

In the instant case the Commissioner points out

" * * * the Huckinses received supplemental or contingent compensation in roughly the same proportions as their stockholdings. * * * Contingent compensation, such as is involved here, paid in proportion to stockholdings, strongly suggests a division of profits rather than a payment for services * * *."

There is support for this reasoning in Twin City Tile & Marble Co. v. Commissioner, 8 Cir., 32 F.2d 229, 231, where increases of compensation to officers were based solely upon the amount of their common stock holdings, and out of all proportion to the amount of services rendered, and it was held that this was substantial evidence to sustain a finding that these increases were disguised distributions made to avoid "the heavy corporation taxes which became effective in 1918".

■ We hold that the findings of the Tax Court as to the reasonable and unreasonable parts of compensation paid to the Huckins' officers in the taxable years must stand.

■ 2. Petitioner argues that the Tax Court committed reversible error in failing to make important findings of fact which were specifically requested by him. It lists what is described as undisputed and uncontradicted facts.

Even if there was evidence favorable to petitioner, the duty of the trial court under rule 52(a) remains the same, *viz.*: to "find the facts specially". This it does by weighing all of the evidence, and drawing inferences from the whole record. It becomes the duty of the trial court to make findings of fact which, if supported by substantial evidence upon the whole record, are sufficient to support its judgment. Wisconsin Memorial Park Co. v. Commissioner, supra, 255 F.2d at page 754. We know of no requirement that a court, which files an opinion and makes findings of fact supporting its judgment, must go further and make categorical findings of fact as to specific items of evidence claimed to be inconsistent with the judgment of the court and its supporting findings and opinion. Requiring such additional action by the court would serve no purpose other than to increase its labors. It is sufficient if the special affirmative facts found by the court, construed as a whole, negative each rejected contention. The ultimate test as to the adequacy of findings will always be whether they are sufficiently comprehensive and pertinent to the issues to provide a basis for decision and whether they are supported by the evidence. Carr v. Yokohama Specie Bank, Ltd., 9 Cir., 200 F.2d 251. In that case, the court said at page 255:

"Where there is, as here, a conflict in the evidence it becomes the duty of the trial court to appraise all facts adduced in proof and it is not clearly erroneous for that court to choose between two permissible and conflicting views as to the weight of the evidence. Bjornson v. Alaska S. S. Co., 9 Cir., 193 F.2d 433. We may not disturb such a choice by the trier of the facts. On the record made in this case we must and do conclude that the findings of fact are not clearly erroneous."

The Tax Court did not err in failing to make findings of fact as now suggested by petitioner.

3. Finally, petitioner argues that the Tax Court's determination is erroneous since the Commissioner failed in his burden of proceeding after petitioner overcame the initial burden of proof. In this connection, it contends that the Commissioner produced no evidence at the trial which would indicate the excessiveness or unreasonableness of the salaries paid, and that, in the instant case, petitioner met its burden of proceeding by introducing "uncontradicted and unimpeachable testimony", and hence the burden was cast upon the Commissioner to rebut petitioner's evidence. Petitioner then points out that, in connection with the Tax Court's change in the salary allowances made by the Commissioner, that court found "that the salary allowances determined by Respondent are inadequate."

Petitioner then asserts that there was more than sufficient evidence in the instant record to justify the compensation claimed by petitioner, and the action of the Tax Court in disregarding such evidence is arbitrary and clearly erroneous.

The fallacy of petitioner's position lies in its ignoring the fact that the Tax Court's action in fixing the reasonable compensation earned by petitioner's officers was based upon all the evidence in the record and that there is nothing to sustain the charge that any of such evidence was disregarded.

Finally, it should be borne in mind, as we stated in Zeddies v. Commissioner, 7 Cir., 264 F.2d 120, 126:

"* * * Deductions are a matter of legislative grace and 'the burden is upon the taxpayer to establish the amount of a deduction claimed,' Helvering v. Taylor, 1934, 293 U.S. 507, 514, 55 S.Ct. 287, 290, 79 L.Ed. 623. * * *"

For the reasons hereinbefore set forth the Tax Court's decision is affirmed.

Decision Affirmed.