**ADAMS TOOLING, INC., an Indiana corporation, Petitioner-Appellant,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.**

**No. 13106.**

United States Court of Appeals
Seventh Circuit.

April 19, 1961.

James F. Thornburg, Edward J. Gray, John L. Carey, South Bend, Ind., for petitioner.

Lee A. Jackson, Chief, Appellate Section, Harold M. Seidel, Atty., Abbott M. Sellers, Acting Asst. Atty. Gen., Robert N. Anderson, Atty., Dept. of Justice, Washington, D. C., for respondent.

Before SCHNACKENBERG and CASTLE, Circuit Judges, and GRUBB, District Judge.

SCHNACKENBERG, Circuit Judge.

From the Tax Court's decision [1] determining deficiencies in income tax of Adams Tooling, Inc., an Indiana corporation, petitioner, for the years 1952 and 1953, it appeals to this court.

This is a companion case to No. 13105 in this court, Huckins Tool and Die, Inc. v. Commissioner, 289 F.2d 549, a joint appendix covering both cases having been filed in this court. The cases were tried before the same judge in the Tax Court, where, by agreement of the parties, much of the evidence was introduced and incorporated in both cases.

Based upon evidence received, as well as a stipulation of facts, the court made findings of fact, the most salient of which we now state, in substance.

Petitioner was organized under Indiana law in 1926. During the taxable years petitioner was engaged in the business of tool and die job shop, in South Bend, Indiana. It specializes in designing and building tools for the aircraft industry and more especially in jet engine parts. These jobs are rather large in scope and rather difficult from an engineering standpoint.

A shop of this character has no fixed or standard product, and is to be distinguished from shops in which end products are manufactured and assembled. The complexities of design and fabrication were such that highly skilled labor was required and technical skill was necessary to manufacture tools and dies, where tolerances must, in some instances, be held to a range of no greater than .0001 of an inch.

Conrad R. Adams is the father of Robert C. Adams. Conrad was born in 1881

and Robert was born in 1911. During the years in question they devoted their time exclusively to the business of petitioner. Petitioner's stock was owned by members of the Adams family and during the relevant period the father and son each owned about one-third of the stock and controlled the corporation.

In the taxable years, ownership of petitioner's outstanding 99 shares of stock was as follows:

|  | 1952 | 1953 |
|---|---|---|
| Conrad R. Adams | 33 | 30 |
| Lillian M. Adams | 31 | 28 |
| Robert C. Adams | 33 | 33 |
| Linda E. Adams | 2 | 4 |
| Conrad R. Adams | | 2 |
| Linda Lee Adams | | 2 |

During 1952 the officers of petitioner were:

Conrad R. Adams, president,

Robert C. Adams, vice president and general manager,

Edwin B. Hampel, vice president and works manager,

Richard Kazmierzak, secretary-treasurer.

In 1953 the officers were the same, except that Fred Binder, Jr., became secretary.

For a five-year period beginning January 2, 1946, petitioner operated under the direction of Conrad R. Adams, Robert C. Adams and Horace W. Wentzell, who were designated general manager, general sales manager and works manager, respectively. Each had a written contract providing for a basic salary of $200 per week, plus one-fifth of the net profits realized by petitioner.

Wentzell, who owned no stock of petitioner, stopped working for petitioner in November 1948, having received the following compensation:

| 1946 | | $15,687.00 |
| 1947 | | 10,480.00 |
| 1948 | (to November) | 8,800.00 |

On June 2, 1947, petitioner entered into a written contract with Edwin B.

Hampel, as sales manager, for a weekly salary of $110, and agreed to pay him a bonus of 5% of its net earnings before federal income and excise profit taxes, with the understanding that the incentive bonus would be increased to 10% beginning with 1952 earnings. Hampel owned none of petitioner's stock.

Conrad R. Adams, Robert C. Adams and Hampel received the following total compensation during the years 1950 through 1954:

|  | 1950 | 1951 | 1952 | 1953 | 1954 |
|---|---|---|---|---|---|
| Conrad R. Adams | $18,000 | $63,001 | $64,088 | $64,456 | $40,170 |
| Robert C. Adams | 18,000 | 63,001 | 64,088 | 64,456 | 40,170 |
| Edwin P. Hampel | — | 22,230 | 35,439 | 36,280 | 24,602 |

Petitioner's books and federal income tax records reflect the following:

| Years | Compensation Paid to C.R. & R.C. Adams | Net Income Before Taxes | Net Income After Taxes |
|---|---|---|---|
| 1947 | $ 20,950 | $ 3,854 | $ 3,045 |
| 1948 | 23,400 | 3,692 | 2,917 |
| 1949 | 18,850 | 3,382 | 2,672 |
| 1950 | 36,000 | 29,086 | 20,844 |
| 1951 | 126,003 | 137,284 | 49,420 |
| 1952 | 128,177 | 124,196 | 43,128 |
| 1953 | 128,913 | 120,904 | 41,211 |
| 1954 | 80,340 | 58,162 | 33,418 |

No cash dividend was ever declared or paid by petitioner. Petitioner had no pension plan, or definitive plant-wide profit sharing plan, or any other form of deferred compensation during the years in question.

The business activities of the tool and die industry are cyclical in nature and tend to fluctuate over the years.

Petitioner had a large volume of sales during the years 1952 and 1953. Its increase in sales and earnings was due in substantial measure to the war economy engendered by the Korean conflict. The substantial increase in production and sales added to the burdens and responsibilities of the executives, but not to an extent commensurate with the increase in production, sales and income.

During the years in question the efficiency of petitioner's management as compared with the tool and die industry in general, was above average.

Respondent determined that the salaries paid to Conrad R. Adams and Robert C. Adams were unreasonable and excessive and to the extent below indicated disallowed the amounts of deductions claimed therefor:

| Year | Amounts claimed | Amounts disallowed |
|---|---|---|
| 1952 | $128,177 | $68,177 |
| 1953 | 128,913 | 68,913 |

The effect of the foregoing was to allow deductions in the total amount of $60,000 for both executives for each of said years.

The Tax Court however made the following findings as to reasonable compensation, and compensation in excess of reasonable claimed in said deductions:

Conrad R. Adams

| Year | Reasonable | In excess of reasonable |
|------|------------|--------------------------|
| 1952 | $51,288 | $12,800 |
| 1953 | 51,656 | 12,800 |

Robert C. Adams

| Year | Reasonable | In excess of reasonable |
|------|------------|--------------------------|
| 1952 | $51,288 | $12,800 |
| 1953 | 51,656 | 12,800 |

That court made other findings of fact and stated, *inter alia:*

" * * * The compensation of the executives was geared largely to profits and reflected in substantial measure the chance benefits of the war economy but, in our judgment, without commensurate increase in the duties and responsibilities of the executives or in the value of their services although their burdens and responsibilities no doubt became somewhat heavier."

Thereupon the court entered its decision, from which this appeal was taken.

Petitioner relies upon the testimony of an expert in the field of executive management, as well as a bank official in South Bend, who both testified that the salaries paid to its officers were reasonable. It also contends that these salaries were reasonable when compared with the averages in the industry and that a comparison of important financial ratios shows that petitioner operated more efficiently and more profitably than the industry as a whole.

Petitioner also argues that the Tax Court's failure to make important findings of fact specifically requested by petitioner constitutes reversible error and that the Tax Court's determination is erroneous since the Commissioner failed in his burden of proceeding after petitioner overcame the initial burden of proof.

The significant facts in this case are similar to those in the companion case of Huckins Tool and Die, Inc., supra. The principles of law which controlled our decision of the Huckins case also control the disposition of this appeal. In accordance therewith, the Tax Court's decision is affirmed.

Decision affirmed.